P. 2357-14 AMISUB SFH INC v. Cigna Health and Life Insurance Co ORAL ARGUMENT NOT TO EXCEED 15 MINUTES PER SIDE Mr. Siegelob for the appellate Thank you, Your Honor. We've reserved three minutes for rebuttal. Very well. Thank you, Your Honors. May it please the Court, Jonathan Siegelob on behalf of the Plaintiff Appellant Hospitals. Your Honors, the District Court granted Cigna's 12B6 motion and dismissed the hospital's complaint with prejudice. In so doing, it committed three errors. First, it committed an error of Tennessee law when it held that the hospitals could not state a claim for unjust enrichment. Second, it committed an error of federal law when it held that the hospital's claims were preempted by ERISA. And third, it misapplied federal pleading standards. I'll address each of these in turn, starting with the Tennessee state law issue. And the first point I want to make there, just very briefly, is the procedural point. As the Court's aware, we've moved to certify this question to the Tennessee Supreme Court. We do believe that it would be appropriate for the Tennessee Supreme Court to have an opportunity to resolve this question of Tennessee law. Well, you should spend your time talking about the merits of your arguments. I'll move right on to the merits, Your Honor. I was just going to say I'm happy to answer any questions about certification, but I will get to the merits now. The first thing I want to say on the merits is that given a choice between following the HCA decision and following the River Park decision, the Court should follow River Park. HCA was an unpublished decision. It's not precedential. River Park is a reported decision. And not only is it a reported decision, the Tennessee Supreme Court actually denied a petition to review River Park, which suggests that the Tennessee Supreme Court was comfortable with how the appellate court decided that case. Well, in the River Park decision, didn't the insurer have a contract with provide as a Medicaid provider or insurer? It did. And that's not present here, is it? Well, the payer status is different, and I know that Cigna tries to distinguish the case on that basis. Here we're dealing with a commercial managed care organization versus a Medicaid managed care organization. In that case, you've got to find a duty on the part of the insurer to pay the overage for the out-of-network providers. And where are you finding that duty here? Well, that's exactly what River Park addressed. The River Park court, it's a detailed decision. It's a long decision. The court was very clear about its rationale. And what it said is that emergency medicine is a very unique context, because you have two parties that are both compelled by law to do business with each other, even though they might not want to. The insurance company is obligated by statute to provide coverage and pay for its members' emergency care, and the hospital is obligated by statute to treat everybody that walks through the door, even if the patient has it. Where are you finding the duty for the insurer in this case? Well, that's what the court addressed. And what it said is that in this unique context where you have this— Are you finding it common law, statutory law? It's common law. It's a common law, equitable duty. What the court said is that in this situation where the parties are compelled to do business with each other, we're going to recognize an implied-in-law agreement between the parties, because they're forced to do business with each other, even though they might not want to. Would that extend to any kind of—would the common law of Tennessee require, then, that an insurer always pay for all the overage of any out-of-network patient? No, it's limited to emergency medicine, because that's the only circumstance where the parties are forced to do business with each other. With any other specialty, the provider doesn't have to treat the patient. It can choose not to. But with emergency, that's not an option. And it's not any overage. We're not—the ask here is not for Cigna to pay the full charge. It's to pay reasonable value, whatever that happens to be. And then there's just a fact question about what reasonable value is. The problem is you don't have a common law provision specifically that addresses this situation. And the closest Tennessee statute, I guess, would be Tennessee Code, Section 56-7-2355, subsection B. And that doesn't do anything for your argument, either. So, I mean, it's easy to talk generally about how you—what you think should be required under Tennessee common law. But you're not—you don't have any specific provision that you can point to. And the further problem is even if you did, you would run into the problem of risk of preemption that would likely defeat your argument. So what do you have to say about all that? Well, getting back to the common law point, I think River Park is the common law. That's a reported decision of the Tennessee Court of Appeals. Well, instead of just repeating the name of the case over and over, River Park is claiming that River Park is controlling and River Park is a great case, you need to explain substantively how River Park gets you to the conclusion you want to get to. And you haven't addressed that. Well, I'm trying to address that, Your Honor. No, you just keep talking about how River Park is a great case. And that's not going to carry the day for you. I think the other common law point is the Freeman Industries case. Well, what's in River Park? What's the holding there that's so definitive in support of your argument? Well, the holding there is that the court recognized an implied-in-law agreement between the parties for the insurer to pay reasonable value in this limited emergency medicine context. Well, okay, but that doesn't address the issue we have here. That is the issue we have here, Your Honor. The core allegation in the complaint is that these hospitals provided emergency medicine to Cigna's members and that Cigna reimbursed them at amounts that were below the reasonable value of the services, and here they're asking to recover that difference, the difference between what Cigna paid and reasonable value. And that's exactly the situation in River Park. There was an out-of-network hospital that provided emergency care to its patients and it wanted to recover the difference between what the hospital paid and reasonable value. But the out-of-network issue is different from the reimbursement of the bravado issue, which is primarily what we have here. Well, it's the same issue because out-of-network is just the status. So these providers don't have a contract with the insurance company that sets the rate. That's why they're out-of-network provider. So there's a question about what the rate should be. Cigna paid just whatever it decided to pay, and the allegation here is that Cigna should have paid more. It should have paid an amount that equals the reasonable value of the services. I think what's difficult is that in River Park itself, because you did have this contractual relationship, what we're looking for is a basis for implying that contract in a case where, indeed, there isn't one. And I don't know if you have other authorities for that proposition, but as we get back to unjust enrichment and your other kind of tenancy equitable claims like Quantum Meroit, we need a benefit that has been provided on Cigna. And as my colleague Judge Bush mentioned, if Cigna doesn't have a duty to pay this, it's hard to say that you're conferring a benefit. And so without reliance on River Park where there was a contract, we're looking for your response about where that duty arises from or how is it that we're supposed to see the benefit conferred on Cigna if Cigna doesn't have an obligation to pay. Sure, and that's a key question. So in terms of the benefit, the key case is Freeman Industries. That's the Tennessee Supreme Court case that really lays out the doctrinal underpinnings of an unjust enrichment claim. And what Freeman says that's important is it says that a benefit doesn't have to be direct. It can be indirect. The plaintiff and the defendant don't necessarily have to be in privity with each other. Any advantage that the defendant gains that has some kind of value is sufficient for a benefit. And what is the theory of benefit on Cigna here? Right, so that's, I mean, at a very basic level, Cigna is a health insurer. Its entire business is to sell health plans. It makes a lot of money doing that. And what a consumer purchases when it buys a Cigna health plan is a promise that when that person needs health care, emergency care in particular, that they will have access to that care and Cigna will pay for it. That promise that Cigna is making would be meaningless if there were not hospitals like these plaintiffs. But I don't think, like, Cigna, in the terms of its contract with the insured, is not promising to pay 100 percent of wherever they go for emergency care. Now, maybe they should, and maybe the law should be different, but just based on what we have in front of us, to say that you're providing a benefit to Cigna because they should be promising this to all of their insureds and they should be covering this for all of their insureds. I mean, the fact of the matter is their contract doesn't require them to do that for their insureds. Well, to be clear, Your Honor, we're not seeking 100 percent of what we charge. We're just seeking reasonable value. So if you're seeking more, you would agree you're seeking more than what the insurance contract says Cigna has to pay? That's correct. We're seeking the reasonable, say, market value. I'm struggling to understand how there's an unjust benefit when Cigna has only agreed it will pay what is in the contract. How is it unjust that someone only has to do what they've agreed to in a contract? Well, again, in terms of the benefit itself, I'll be more specific. So you might have noticed we attached this arbitration award from a similar case that Cigna had with a different hospital, where the panel found in favor of the hospital on the same theory. And that came after discovery, after a final hearing. But what the panel found is that Cigna creates what are narrow network plans. So it has a very small number of hospitals in its network, and it achieves huge cost savings by doing that because it funnels. That sounds like a good reason for people not to pick Cigna as their health insurer, but it doesn't somehow give rise to a- Well, that's what I'm getting to. Cigna achieves huge cost savings by funneling all of its members to a small number of hospitals, which give it very favorable rates. And that's fine with non-emergency. The problem is that when you're dealing with an emergency situation, if a patient is having a heart attack and the nearest in-network hospital is 100 miles away, it doesn't work. Now, Cigna doesn't care. It's still able to do this because it knows that out-of-network hospitals like these plaintiffs are there to treat the patients because they have no choice. So the services that these out-of-network hospitals provide are essentially the scaffolding that allows Cigna to sell these plans and make money doing that. And what the arbitration panel found is that that's fine. Cigna is permitted to do that, but it has to pay value to the hospitals, the out-of-network hospitals that allowed it to operate this business. So that's a benefit. Whether it's direct or indirect under Freeman doesn't necessarily matter. The benefit is the hospitals can exist and treat their patients. But your benefit theory is broader than it's like you're giving something that Cigna should be paying. It's more of a, like, because it keeps the hospitals in business that Cigna's insureds will need to go to or, like, will keep them healthier. Is that your theory of benefit?  Well, right. Cigna is able to operate a very profitable business, specifically with respect to these narrow-network plans, because the hospitals are there to treat its members and do treat its members. And then we alleged in the complaint that Cigna generated a windfall by taking advantage of that status and underpaying the hospitals. Counsel, your red light's been on a long time now. Understood. Thank you, Your Honors. Yes, please. Thank you, Your Honor. May it please the Court, my name is Warren Haskell, and I represent Cigna, which administers health benefit plans on behalf of employers and individuals. Now, those plans can vary depending on the plan sponsor's choices, but every one of them lays out the benefits available for the emergency services at issue in this case. And this appeal is about whether an out-of-network provider can use Tennessee unjust enrichment law to demand more money than what the benefit terms provide. The district court said no, and now Tennent, as you heard once, the court to do two extraordinary things. First, Tennent wants this court to say that instead of balanced billing patients, Tennent can use Tennessee law to force Cigna to pay above and beyond what the plan terms say, even though that directly conflicts with the Tennessee Court of Appeals decision in HCA. Second, Tennent wants this court to find that state common law can dictate what Cigna reimburses Tennent, even though ERISA and even after Rutledge expressly preempts any state law that modifies the terms of ERISA plans. The district court was right to reject both theories, and this court should too. So let's talk about the... Can I actually ask you about preemption? Of course. There are... And I know that kind of the law has such changed with No Surprises Act and things like that, but there were... There are some states, to my knowledge, and in everyone's briefings, like Florida, that have provisions that require more of this kind of fair and reasonable market value. Are those state laws preempted under your theory? I would say yes, they are, because they would go directly to what the plan has to pay for a set of benefits. And when you look at what the Supreme Court said in Rutledge at page, what was it, 86, right? ERISA is primarily concerned with preempting laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits. And so those state laws would, to the extent that they deal with ERISA plans. It's a different... It's an easier issue here, I think, where you're talking about a common law duty. Common law issue. But if we were to find on the preemption grounds that you're asking how many of these state laws... I mean, obviously, this is the only one, some sort of common law duty that would be before us. But by implication, how many would we be suggesting are preempted? There are certainly others. I don't have a count. There's the list, I think, that we put in our supplementary brief where it had this, what are called the SSLs. And so those would be, to the extent... And certain of those don't even apply if it's a self-funded plan. So, for instance... Right, if it's not an ERISA plan. Right. So there are certain... There's a give and take there, what states have recognized things would be preempted. So they basically said, we're not going to apply it to ERISA. Some states, if they didn't specify it, then it would be preempted. But in this case, right, this is just a common law duty that would absolutely be preempted. And so... The preemption ground, I guess, would have the benefit of our not having to opine necessarily. I guess we still would have to opine on what Tennessee law is. You would. In order to reach the right things. Yeah, you would. Because for two reasons. One, I think not all of these plans are ERISA plans, as we learned in discovery. And so that would be for that reason, too. And I think... You don't believe that we should certify, or do you believe that? I do not believe that you should certify this question. You know, I think the Sixth Circuit made clear, right, that if there's a clear and principled course for the court to follow from the Tennessee Court of Appeals, that it should. The ACA case. Absolutely. Absolutely. The fact that it's unpublished doesn't affect that analysis. It doesn't. This court has said time and time again that whether it's unpublished or published, the Tennessee Court of Appeals are authority that should not be disregarded. Look, I think when you look at HCA, it's directly on all fours, and it works on the merits, too, right? And it did all of the work that your honors would have to do for why River Park doesn't apply here. And it doesn't apply when there's a commercial plan, right? So when we think about the two reasons why HCA came to a different conclusion than River Park, River Park was primarily focused on, as your honors said, who owes the duty to who? And River Park said, look, both in these cases the parties have no choice, and it's not because they had to cover emergency services. River Park had no choice to deal with BlueCare, that Medicaid MCO, because it couldn't balance bill patients. That was the first key distinction that HCA made. And there's no dispute that Tenet could go and balance bill the patients, right? The NSA has now, for claims going forward, said that we don't want that to happen. But prior to that, that was the law, that they could balance bill. There's no dispute there. And then so River Park and Tenet had a choice. They didn't have to deal with Cigna, or they didn't have to deal – I'm sorry, HCA had a choice. It didn't have to deal with Blue Cross, and Tenet doesn't have to deal with Cigna. And on the other side, Blue Cross and HCA and Cigna here, they have a choice, too. Because the plans dictate what they are going to do, that is the only obligation that they have. So once they pay according to the planned terms, their job is done, right? That was unlike in River Park, right, where the BlueCare Medicaid MCO had a risk arrangement with the state where it said, look, we're going to arrange and pay for all of the care that these people have in exchange for a monthly payment, right? Once that happened, they basically took on all the responsibility not just to arrange for the care but also to pay for that care, right? And that's a huge difference between that Medicaid MCO and a commercial plan where the commercial plan lays out all the terms. And again, if Tenet wasn't happy with it, it could have always balanced bills. And I want to go back to the impact here of the Affordable Care Act when we're concerned about risk of preemption and related issues. As I understand, there's a regulation implementing the Affordable Care Act that contains a formula that mandates the minimum amount that Cigna would have to pay for out-of-network emergency care. So the hospitals do not allege that Cigna failed to pay that amount. Doesn't that kind of direct us to a resolution here of this case? Your Honor is talking about the greatest of three regulation in the Affordable Care Act, which is, you know, they're not alleging. Tenet is not saying that Cigna didn't pay for that. And for plans after that was in effect, my understanding is all those plans basically incorporated that provision in, right? And again, this goes back to what are we doing here if Cigna has paid according to the terms of the plan? There's no common law separate duty that Cigna would have to pay more for that. The federal government has spoken at various times on what should happen. And there's no allegation that Cigna hasn't abided by that. They're trying to use state law to override whatever the plan terms say, which I think gets to, and I'll just say, I think, I'm going back just one moment before I go to risk of preemption. Your Honor's asked again, should we certify? And I said absolutely not, right? I want to bring Your Honor's attention to the Lucas case, which Tenet cites in its reply. And at page 640, what Lucas says is, look, if a court sitting in diversity has an option between following courts that reasonably reconcile what state law has or finding a conflict, the court should prefer the approach that reasonably reconciles that. And here, HCA did that, right? It's what Tenet's saying should happen in River Park from what actually should happen in a commercial plan. So there's, following Lucas, HCA gives this court the guidance that it needs to not certify. I think the other thing is that Tenet raised it too late, right? I think it's Lucas, I'm sorry, it's Amazon, I think, the case that we cite in our certification brief at page 9 that basically says, look, if you're going to raise certification, do it before the district court decides. Otherwise, you're just gambling with certification, and that's not something that the Sixth Circuit likes to do. I'm wondering, counsel, before your time expires, if you might address your friend's argument about benefit, that if essentially the insurance companies, whether it's Cigna or others, are playing well below market rate, and the hospitals still have to provide all of this emergency care, then at some point, really, they can't operate. Sure, they can balance bill, but how much do they really get back from individual patients? And essentially, you're kind of dependent on them eating these costs, and that while it might not be a direct benefit because you don't have a direct obligation on the contract to pay, you're still benefiting by the fact that they're there, they're treating your patients, your patients are healthier, you need hospitals to exist so your insurance don't have to go 100 miles to their in-network hospital. Well, as a legal matter, HCA said, no, there is no benefit, right? And I think that's the law of Tennessee. The Court of Appeals has said there is no benefit. The member under Tennessee common law is the one that received the benefit in the context of a commercial plan. So as a matter of Tennessee law, Cigna does not receive the benefit, right? And there is the issue. It is because of balanced billing. The member continues to have that obligation to pay. And all the benefits that Tennant tries to say, well, Cigna gets from that. Look, the plans. The theory of benefit, was this raised in the HCA case? The theory of? The benefit that the hospital is raising here. I don't know specifically if this, you know, the saving money, right, was directly addressed, but HCA certainly said, look, what happens is that the Blue Cross, you know, commercial entity issues these plans based on the facts that, you know, the coverage that people want. Was this theory of benefit argued below? Not, no. Look, when we had the motion to dismiss, there was a general cite to their complaint, but they didn't raise this idea that there are all these other benefits that you might have, other than Cigna saves money, right, which is directly what HCA said, you cannot. That is not a benefit that would be understood under Tennessee law to work. It doesn't. Right, everything that they're talking about now is highly speculative, the type of things that Twombly doesn't allow you to have, right. It's what happens down the road if we don't pay enough. That's the type of thing that is not satisfied by Rule 12. And I just, so really I want to, unless your honors have any other questions about the Tennessee common law, I want to talk just a little bit about Rutledge and why it doesn't apply, because I think that is really where Tennant's argument goes. It says, well, Rutledge is directly on point, and it's not. When you look at Rutledge, right, Rutledge was dealing with a situation where there was an Arkansas law that basically dealt with PBMs and said you have to pay a certain amount to retail pharmacies, right. But it made very clear that there were two relationships at issue, right. And the Arkansas law was only dealing with one. So when a PBM basically has a relationship with retail pharmacies, right, that's on one hand, and it has a relationship with plan sponsors on the other, right. And those are two separate relationships, and the Supreme Court made very clear the rates that a PBM may receive from a plan sponsor often differs, I believe that was the quote, often differs from what they may pay the pharmacies. And the Arkansas regulation was only looking to what regulating that separate relationship outside of the plan that the PBMs had with retail pharmacies. That is not what we're dealing with here, your honors. What we're dealing with here is straight down the line. Tenet is saying, page one of their complaint, that Cigna pays, quote, on behalf of the plans. So if Tenet is going to say you have to pay a different amount under common law, Tennessee law, reasonable value, you are saying that Cigna, when you're paying on behalf of the plans, you have to pay something different. And that is clearly a specific payment standard that when you look at the terms of Rutledge, page 86, it says you can't do that under ERISA. When you look at Rutledge and you look at Travelers, you look at Dubuono, they're talking about, look, there are certain things that may indirectly influence what a plan, ultimately the cost of a plan. They don't talk about the claim that Tenet is trying to use here, which is when you're paying out plan benefits, you've got to pay something different. And that is clearly what Congress wanted to avoid through preemption when it said you can't have state laws. You agree that not all the plans at issue here are ERISA plans that would be preempted. That's correct. Not all of them are. It wouldn't apply to all of them. It would not. It would not. And that's part of the rule eight issue that we dealt with, which we didn't know at the outset which were the vast majority are ERISA plans, though. But if we go on the Tennessee common law and we say it's not available, that would apply to all of them. That would apply to all of them. That's correct. That would basically resolve everything in the case. And I see my time is about to expire, so before going on, is there anything else? It's not over yet. We'll stop you if you want to stop early, though. I'll just use it to say thank you. Thank you. Thank you very much. We'll hear rebuttal. Thank you, Your Honor. If I could return very briefly to this idea of the benefit conferred. And, Judge Blumkatz, I think you hit the nail on the head. It's this whole system, Cigna's cost savings, its ability to operate, its business, all of that is dependent on the services provided by these hospitals. And, Judge Bush, you asked, was that theory specifically presented in HCA? I don't believe it was in terms of the cost savings. And I think you also asked if it was argued below. It was alleged, I would say, in broad outlines in the complaint, but then the complaint was dismissed with prejudice on the first go-around. It was never amended. So I would say, at the very least, if this is a viable theory, and we certainly believe it is, dismissal, I mean, whether a benefit was conferred, that's a fact question. The first dismissal should have been at least without prejudice and with leave to amend to include more detail about how all of this works. Judge Clay, you asked about the greatest of three regulation. You mentioned that briefly. That's an ACA regulation. And what it says very specifically, and there's been regulatory guidance on this, the greatest of three sets a floor for reimbursement. It does not set a ceiling. States are permitted to require higher reimbursement amounts than are required under the regulation. And so our argument here is that Tennessee law does that through common law principles of unjust enrichment. Is that true even if the higher reimbursement would affect the provision of services, the delivery of the ability to provide and deliver services in accordance with federal requirements? It does. There's very clear guidance on this. We can provide it in a supplemental filing to the court if the court wants to see it. But what it says is that states are permitted to set higher reimbursement amounts than required under the federal regulation. And a number of them do. And what we have argued here is that Tennessee does through these common law principles. And I think, Judge Bush, again, you asked about certification. We really do have two conflicting intermediate appellate decisions. So at the very least, we do believe that the Tennessee Supreme Court should be given an opportunity to resolve the issue to the extent the court has any uncertainty about it. I guess finally, in the last 15 seconds, I'll touch on ERISA preemption really briefly. The issue there, and Rutledge was very clear about this, cost regulation is not preempted. So if a regulation merely imposes costs on ERISA plans or tells plans they have to pay more for a service that they cover than they otherwise would, that's okay. Where it becomes not okay is where the regulation tells plans they have to cover something that they wouldn't otherwise cover. But that's not the situation here. This is purely about costs and rates. With that, thank you once again, Your Honor. Thank you very much. The case is submitted.